01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  STEVEN E. DELNICK,              )       CASE NO. C04-1552-MAT
                                    )
10          Plaintiff,              )
                                    )
11      v.                          )       ORDER OF REMAND
                                    )
12  JO ANNE B. BARNHART,            )
                                    )
13          Defendant.              )
    _____ )

14

15      Plaintiff Steven Delnick proceeds through counsel in his appeal of a final decision of the

16  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

17  plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance (DI)

18  benefits after two hearings before an Administrative Law Judge (ALJ).  The parties have

19  consented to proceed in this matter before a Magistrate Judge.

20      Having considered the ALJ's decision, the administrative record (AR), and all memoranda

21  of record, the Court hereby ORDERS that this matter be REMANDED in part for an award of

22  benefits for the period of November 1, 1998 to August 4, 2000 and REMANDED in part for

23  further administrative proceedings for the period after August 4, 2000.

24                          **FACTS AND PROCEDURAL HISTORY**

25      Plaintiff was born on September 2, 1943.  He completed approximately three years of

26  college.  Plaintiff's prior relevant work experience includes work as a cook, taxi driver, automobile

01   salesperson, horse trainer, and jockey agent.  Plaintiff alleges that he is disabled due to both mental
02   and physical impairments.

03       Plaintiff originally filed applications for SSI and DI benefits on or about April 1999.  He
04   alleged a disability onset date of November 1, 1998.  The Commissioner denied plaintiff's
05   applications initially and on reconsideration.  ALJ Cheri Filion held a hearing on November 2,
06   2000.  (AR 586-622.)  On January 8, 2001, the ALJ issued a written decision, which concluded
07   that plaintiff was not under a disability as defined in the Social Security Act at any time through
08   the date of the decision.  (AR 37-46.)  Plaintiff appealed the ALJ's decision to the Appeals
09   Council.  While awaiting a decision from the Appeals Council, plaintiff re-applied for SSI and DI
10   benefits in April 2001.  The Commissioner again denied plaintiff's applications initially and on
11   reconsideration.

12       On June 20, 2002, the Appeals Council remanded ALJ Filion's January 2001 decision for
13   further proceedings.  (AR 52-55.)  Plaintiff's April 1999 and April 2001 applications were
14   consolidated for a new hearing.

15       ALJ Filion held a new hearing on October 15, 2002.  (AR 623-62.)   Medical expert
16   Richard Johnson, M.D., and vocational expert Brian Sorenson testified at the hearing.  The ALJ
17   again denied plaintiff's claims in a decision dated January 29, 2003.  (AR 20-32.)  Plaintiff
18   appealed this decision to the Appeals Council.  On May 28, 2004, the Appeals Council found no
19   reason to review the ALJ's decision.  (AR 12-15.)  As a result, the ALJ's decision of January 29,
20   2003 became the final decision of the Commissioner.  Plaintiff has appealed the Commissioner's
21   decision to this Court.

22                              **DISCUSSION**

23       The Commissioner follows a five-step sequential evaluation process for determining
24   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must
25   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff has not
26   engaged in substantial gainful activity since the alleged onset of disability.  At step two, it must

ORDER OF REMAND
PAGE -2

01 be determined whether a claimant suffers from a severe impairment.  The ALJ found that plaintiff's
02 degenerative disc disease in his spine, affective disorder, and anxiety disorder were severe
03 impairments.  Step three asks whether a claimant's impairments meet or equal a listed impairment.
04 The ALJ found that plaintiff's impairments do not meet or equal a listed impairment.  If a
05 claimant's impairments do not meet or equal a listing, the Commissioner must assess residual
06 functional capacity (RFC) and determine at step four whether the claimant has demonstrated an
07 inability to perform past relevant work.  The ALJ assessed plaintiff's RFC and found he could
08 perform his past relevant work as a cook, taxi driver, or automobile salesperson.  Because this
09 finding at step four resulted in a finding of not disabled, the ALJ did not proceed to step five, at
10 which point the burden shifts to the Commissioner to demonstrate that the claimant retains the
11 capacity to make an adjustment to work that exists in significant levels in the national economy.

12    This Court's review of the ALJ's decision is limited to whether the decision is in
13 accordance with the law and her findings supported by substantial evidence in the record as a
14 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more
15 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable
16 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750
17 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's
18 decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
19 2002).

20    In this case, plaintiff alleges that the ALJ erred at step two by finding that plaintiff's
21 gambling impairment and knee pain were not severe impairments.  Plaintiff also contends that the
22 ALJ erred in assessing his RFC, in assessing medical and lay evidence, in assessing plaintiff's
23 credibility, and in using and interpreting testimony from a vocational expert.  Plaintiff seeks
24 remand for an award of benefits or, alternatively, remand for further administrative proceedings.
25 The Commissioner asserts that the ALJ's decision was supported by substantial evidence and was
26 free of legal error.

ORDER OF REMAND
PAGE -3

01                              <u>Step Two Determinations</u>

02          At step two, the ALJ must determine whether the claimant has a medically severe

03   impairment or combination of impairments.   Step two has been characterized as "a de minimis

04   screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

05   1996).  "An impairment or combination of impairments can be found 'not severe' only if the

06   evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

07   ability to work.'"  *Id.* (internal citations omitted).  Plaintiff contends that the ALJ erred at step two

08   because she did not find plaintiff's gambling or knee pain to be severe impairments.

09   *<u>Gambling</u>*

10          At step two, the ALJ addressed plaintiff's gambling as follows:

11          [Plaintiff] has an anxiety disorder with obsessive behavior (gambling).  While he
            occasionally gambles, the records suggest that this impairment does not cause him
12          more than minimal limitations in his ability to perform work related activity.  I find
            that the . . . anxiety disorder cause[s] him more than minimal limitations in his ability
13          to perform work related activity.

14   (AR 28.)  The Commissioner argues that the "ALJ correctly identified gambling as a manifestation

15   of a severe mental impairment, rather than a severe mental impairment itself."  (Dkt. 10, at 6.)

16   The ALJ's characterization of plaintiff's gambling as a manifestation of his anxiety disorder is

17   consistent with the testimony of Dr. Johnson, the medical expert at the hearing.    *See* AR 652

18   (stating plaintiff has "been diagnosed with an anxiety disorder with compulsive gambling").   In

19   light of plaintiff's testimony regarding the infrequency of his gambling in the months preceding the

20   two hearings, the ALJ's finding that he gambles "occasionally" is also supported by substantial

21   evidence.  (AR 602-03, 648-49.)

22          Plaintiff argues that whether or not his gambling regarded as a separate impairment, the

23   ALJ erred by finding that his gambling did not cause more than minimal limitations in his ability

24   to perform work related activities.  Plaintiff points to an August 2000 evaluation by Dr. Washburn,

25   an examining psychologist, which stated that plaintiff had marked limitations in his ability to

26   exercise judgment and stated that plaintiff's "gambling compulsion overwhelms judgment."  (AR

ORDER OF REMAND
PAGE -4

394.) However, Dr. Washburn's brief statement provided no explanation regarding how plaintiff's gambling compulsion would affect his ability to use judgment in performing work-related activities.  An ALJ need not accept an opinion of a physician if it is "conclusionary and brief and is unsupported by clinical findings."  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Although Dr. Washburn conducted clinical testing of plaintiff in March 2000, his report from that evaluation did not indicate that plaintiff's gambling affected his ability to exercise judgment in performing work-related activities.  Indeed, Dr. Washburn stated in his March 2000 report that plaintiff's "practical judgment in most areas is adequate."[1]  (AR 356.)  As such, the ALJ did not err at step two in finding that plaintiff's gambling did not have more than a minimal effect on his ability to perform work-related activity.

*Knee Pain*

The ALJ also found that plaintiff's knee impairment was not severe, noting that plaintiff "has reported knee problems, but x-rays show only mild changes and the claimant has reported that he is able to walk three miles at a time."  (AR 27-28.)  In November 2000, plaintiff was diagnosed with "mild" degeneration and osteoarthritis in his knees.  (AR 436-37.)  There do not appear to be any reports from acceptable medical sources indicating that plaintiff's knee problems were more than mild, nor did plaintiff testify at the hearings regarding his knee pain.  In addition, as the ALJ noted, plaintiff also reported in July 2002 that he had "walked 3+ miles each day the last few days."  (AR 515.)

Plaintiff points to a November 14, 2000 medical report where he reported knee pain that was worse with bending and getting up from a sitting position.[2]  (AR 419.)  However, plaintiff also

---

[1] In addition, it should be noted that Dr. Washburn had previously found marked limitations in plaintiff's judgment in a report in August 1999, but attributed that finding to plaintiff's depression rather than to his gambling.  (AR 329.)

[2] Plaintiff cites two other documents to support his claim of knee pain (AR 519, 522), but knee pain is not mentioned in either document.

ORDER OF REMAND
PAGE -5

01   told examining physician Raymond West in November 2001 that "his knees do not pose a

02   significant problem." (AR 487.) As such, the ALJ's finding that plaintiff's knee impairment was

03   not severe is supported by substantial evidence.

04   Evidence from Dr. Washburn

05        Plaintiff also argues that the ALJ erred in assessing medical evidence from Dr. Washburn,

06   an examining psychologist. In general, more weight should be given to the opinion of an

07   examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th

08   Cir. 1996). Where not contradicted by another physician, an examining physician's opinion may

09   be rejected only for "clear and convincing reasons." *Id.* Where contradicted, an examining

10   physician's opinion may not be rejected without "'specific and legitimate reasons' supported by

11   substantial evidence in the record for so doing." *Id.* "Where the Commissioner fails to provide

12   adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits]

13   that opinion as 'a matter of law.'" *Id.* at 834. However, courts retain flexibility in applying this

14   "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding

15   for further determinations where there were insufficient findings as to whether plaintiff's testimony

16   should be credited as true).

17        Dr. Washburn examined plaintiff three times in 1999 and 2000. In August 1999, Dr.

18   Washburn found that plaintiff had a marked depressed mood, marked limitation in his ability to

19   exercise judgment and make decisions, marked limitations in his ability to tolerate the pressures

20   and expectations of a normal work setting, and a number of other moderate limitations. (AR 328-

21   29.) He also stated that plaintiff was "so depressed that he feels overwhelmed by routine tasks."

22   (AR 329.) In March 2000, Dr. Washburn performed clinical testing on plaintiff and assessed his

23   global assessment of functioning (GAF) at 50.[3] (AR 357.) Dr. Washburn stated that "[b]ecause

24

---

25        [3] "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of

26   the following: social, occupational, or school functioning.'" *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2nd Cir. 2004).

ORDER OF REMAND
PAGE -6

01 of his deep depression, it is extremely unlikely that Mr. Delnick would be able to find and retain

02 full-time, gainful employment" (AR 358), and that "[i]t seems reasonable to assume that Mr.

03 Delnick will not be able to work until his depression and pathological gambling has been brought

04 under control." (AR 359.) In August 2000, Dr. Washburn found that plaintiff continued to have

05 a marked depressed mood, a marked global illness, marked limitations on his ability to exercise

06 judgment and make decisions, marked limitations on his ability to tolerate the pressures and

07 expectations of a normal work setting, and a number of other moderate limitations. (AR 394-95.)

08 He again opined that plaintiff would not be able to work until his depression improved.   [4]  (AR

09 395.)

10          At the initial hearing, the ALJ rejected Dr. Washburn's opinion.  The Appeals Council

11 found that the ALJ failed to obtain evidence to rebut Dr. Washburn's opinion and directed her on

12 remand to give further consideration to his opinion and to explain the weight given to such opinion

13 evidence.  (AR 53-54.)

14          After the second hearing, the ALJ addressed Dr. Washburn's opinions as follows:

15 I have considered Dr. Washburn's reports.  He seemed to feel that the claimant's
   gambling was his worst impairment and that he was staying away from work so that
16 he would not earn money to gamble.  Dr. Washburn does not, however, clarify how
   money received from this program would be any different from money the claimant
17 earns himself in terms of fueling his gambling addiction.  He did not feel that the
   claimant's depression would improve until he was able to conquer his gambling.  The
18 record shows that the claimant has not conquered his gambling problem.  He still
   gambles on occasion, but his activities do not appear to be ruled by his gambling.  His
19 affective disorder is stabilized, and he has been able to attend school for two years.
   He has friends, he leaves his home on a regular basis, and he has no problems with
20 concentration as documented by his schooling, hobbies, and mental status
   examinations.  Dr. Johnson, the only mental health expert who has been able to review
21 the entire medical record, felt that the claimant could persist for an eight-hour day.

22

23          [4] Dr. Washburn's opinions are not inconsistent with other sources who examined plaintiff
   in the 1999-2000 time period.  In May 1999, Dr. Nagavedu Raghunath performed a psychiatric
24 evaluation of plaintiff and diagnosed him with a depressive disorder.  (AR 264.)  Dr. Raghunath
   also found that plaintiff's judgment and insight were impaired and rated his GAF at 50, the same
25 assessment that Dr. Washburn made in March 2000.  As discussed below, plaintiff also had weekly
   counseling sessions during this time frame with counselor Holly Delaney, who noted similar issues
26 regarding  plaintiff's depression and ability to work.

ORDER OF REMAND
PAGE -7

01   (AR 29-30.)  In this discussion, the ALJ does not explicitly reject Dr. Washburn's opinions.   [5]

02   Indeed, the Commissioner asserts that the ALJ "did not reject Dr. Washburn's opinions in

03   formulating the residual functional capacity finding."  (Dkt. 10 at 9).  Instead, the Commissioner

04   asserts that the ALJ "considered those opinions and other evidence that showed Plaintiff's

05   condition had improved from what it had been when Dr. Washburn last examined Plaintiff."  (*Id.*

06   at 9.)

07        As the Commissioner suggests, there is substantial evidence in the record that plaintiff's

08   mental condition improved after Dr. Washburn last examined him in August 2000.  On July 17,

09   2001, plaintiff was examined by Dr. Rufino Ramos, who found that plaintiff was responding to

10   Depakote and Wellbutrin.  (AR 398.)  Dr. Ramos also assessed plaintiff's GAF at 60 (AR 397),

11   which was 10 points higher than Dr. Washburn's last GAF assessment in March 2000.  Dr.

12   Johnson, the non-examining medical expert at the second hearing in this matter, noted Dr. Ramos'

13   improved GAF assessment in opining that plaintiff could persist for an eight hour day.  (AR 656.)

14   In addition, treatment notes from ARNP Kathryn Draper in 2001-2002 support the ALJ's finding

15   that plaintiff's affective disorder had stabilized.  (AR 473-76, 564-68.)

16        However, it does not appear that the ALJ considered whether Dr. Washburn's earlier

17   opinions supported a finding of disability prior to the improvements in his mental condition.  As

18   noted earlier, Dr. Washburn opined in August 1999 that plaintiff was "so depressed that he feels

19   overwhelmed by routine tasks."  (AR 329).  Following clinical testing, he further opined in March

20   2000 that plaintiff would be unable to work due to his deep depression.  (AR 358.)  In August

21

22        [5] As plaintiff notes, the ALJ's description of Dr. Washburn's opinions is not entirely

23   accurate.  Contrary to the ALJ's statement that Dr. Washburn did not clarify how funds from
     Social Security would be different from other funds in terms of fueling plaintiff's gambling

24   addiction, Dr. Washburn stated that plaintiff "would need a protective payee if he were granted
     any funds" from Social Security.  (AR 359.)  Dr. Washburn also did not state that plaintiff's

25   gambling was his "worst impairment," although he did opine that plaintiff's "occupational success
     has been limited primarily by his long-standing pathological gambling and the characterological

26   flaws that accompany this disorder."  (AR 358.)

ORDER OF REMAND
PAGE -8

01  2000, he again opined that plaintiff could not work until his depression improved, and estimated

02  that plaintiff's limitations would continue for a year.  (AR 395.)  These opinions are generally

03  consistent with the lay testimony provided by Holly Delaney, who counseled plaintiff between

04  December 1998 and October 2000.  (AR 348- 51, 390-91.)  If not rejected, these opinions would

05  appear to support a finding that plaintiff was unable to work for a continuous period of at least

06  12 months, the minimum period prescribed by 20 C.F.R. § 404.1505.

07      The Commissioner argues that Dr. Washburn "was incompetent to opine in a binding

08  fashion as to whether Plaintiff could or could not work." (Dkt. 10, at 11.)  However, Ninth Circuit

09  has held:

10      In disability benefits cases . . . physicians may render medical, clinical opinions, or
        they may render opinions on the ultimate issue of disability – the claimant's ability to
11      perform work.  As we stated in *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993),
        "'[t]he administrative law judge is not bound by the uncontroverted opinions of the
12      claimant's physicians on the ultimate issue of disability, but he cannot reject them
        without providing clear and convincing reasons for doing so.'"

13

14  *Reddick v. Chater*, 157 F.3d 715, 725 (9 th Cir. 1998).  In addition, even if Dr. Washburn's

15  opinions were controverted by another physician, the ALJ could only reject his opinions by

16  providing specific and legitimate reasons supported by substantial record evidence.[6]  *Lester*, 81

17  F.3d at 830.

18      The ALJ did not provide such reasons here.  Indeed, it is not even clear that she rejected

19  his opinions at all.  As such, Dr. Washburn's opinions may be credited as a matter of law.  *See*

20  *Lester*, 81 F.3d at 834.  However, it should be emphasized that Dr. Washburn's opinions are not

21  unbounded.  Dr. Washburn's opinions do not contemplate that plaintiff would be unable to work

22

23      [6] Though not entirely clear, the ALJ may have felt that the testimony of Dr. Johnson, the

24  non-examining medical expert at the hearing, contradicted Dr. Washburn's opinions.  However,
    Dr. Johnson's opinion that plaintiff could persist for an eight-hour day was essentially based on

25  Dr. Ramos' finding in July 1991 that plaintiff's GAF was 60.  (AR 656-57.)  As such, Dr.
    Johnson's testimony does not contradict Dr. Washburn's opinions, but instead reflects the

26  improvements in plaintiff's conditions subsequent to Dr. Washburn's last examination.

ORDER OF REMAND
PAGE -9

01  if his condition subsequently improved.

02  <u>Plaintiff's Credibility</u>

03      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In

05  finding a social security claimant's testimony unreliable, an ALJ must render a credibility

06  determination with sufficiently specific findings, supported by substantial evidence.  "General

07  findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

08  evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.  "We require the ALJ

09  to build an accurate and logical bridge from the evidence to her conclusions so that we may afford

10  the claimant meaningful review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d

11  565, 569 (7th Cir. 2003).  "In weighing a claimant's credibility, the ALJ may consider his

12  reputation for truthfulness, inconsistencies either in his testimony or between his testimony and

13  his conduct, his daily activities, his work record, and testimony from physicians and third parties

14  concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v.*

15  *Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

16      The ALJ assessed plaintiff's credibility as follows:

17      I do not find the claimant to be fully credible.  He testified at the hearing that he had
        a nervous breakdown at his last job, and that he was not functioning.  However, he
18      was working as a cook on a boat, and was able to finish the job until it ended.  He
        said that he couldn't answer the telephone or the door, but he leaves his home five
19      days a week to attend school, does his own grocery shopping, and goes to the library
        regularly.

20
        The claimant reports that he has been depressed for many years.  In the past he was
21      gambling and he was smoking marijuana, but he was able to work.  There is no
        evidence to suggest that his affective disorder is now worse than it was before.  His
22      treating provider has indicated that the claimant's condition is stable.  The claimant
        has stated that he wants to stay home and not answer the door or telephone, but for
23      spring break in April of 2002, he was planning on flying to Utah to visit friends.  In
        January of 2001, he reported that he had a social strength in his ability to entertain
24      others by telling true stories of things he has seen when he traveled.  He reports
        severe back and knee pain, but in July of 2002, he was walking more than three miles
25      a day and in August of 2002 he was lifting a small boat.  He told Dr. West that he
        could bend and squat and lift 80 pounds, carrying it 50 feet.  The claimant testified
26      that he did boat building more as a hobby than toward a career.  If he only attends half

ORDER OF REMAND
PAGE -10

01    the time, this would be consistent with this report.  Nonetheless, the claimant spends
      many days a week . . . going to school, performing work that requires stooping and
02    bending, and lifting at least at the medium  level.  His counselor has noted that he is
      doing well in his boat building class in spite of attendance lapses.

03

04    (AR 29.)

05          The ALJ discredits plaintiff's testimony that "he had a nervous breakdown at his last job,

06    and that he was not functioning" by stating that he "was able to finish the job until it ended."

07    However, the hearing transcripts do not appear to indicate that plaintiff testified at either hearing

08    that he had a nervous breakdown at his last job, as the ALJ asserts.  Instead, it appears that he

09    testified that he had a nervous breakdown after his last job as a cook on a fishing boat ended. [7]

10    *See, e.g.*, AR 598-99 (plaintiff testifies that after his last job ended, "I went home and went into

11    a funk").  As such, the ALJ appears to be discrediting hearing testimony that plaintiff did not offer.

12          The ALJ also discounts plaintiff's testimony that "he couldn't answer the telephone or the

13    door."  The ALJ noted that plaintiff "leaves his home five days a week to attend school, does his

14    own grocery shopping, and goes to the library regularly" and that "for spring break in April of

15    2002, he was planning on flying to Utah to visit friends."  These are sufficient reasons to discount

16    plaintiff's testimony regarding his abilities to answer the telephone or answer the door.  Although

17    plaintiff correctly notes that symptoms may wax and wane, the evidence cited by the ALJ suggests

18    that he is not so limited that he would be unable to answer the telephone or the door.  However,

19    it should be noted that the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff

20    has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking

21    for exercise, does not in any way detract from her credibility as to her overall disability.  One does

22    not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044,

23    1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that

24    _____

25          [7] The record contains other evidence that plaintiff experienced a breakdown *after* his last
26    job ended.  *See, e.g.*, AR 167 (plaintiff states that he noticed his condition post-employment); AR
      348 (plaintiff's depression began "shortly after returning from his last fishing trip").

01  "[s]everal courts, including this one, have recognized that disability claimants should not be

02  penalized for attempting to lead normal lives in the face of their limitations").

03      The ALJ also did not fully credit plaintiff's reports about the severity of his back and knee

04  pain, noting that he was walking three miles a day in July 2002, lifted a small boat in August 2002,

05  and told Dr. West that he could lift 80 pounds and carry it fifty feet.  These are sufficient reasons

06  for not fully crediting plaintiff's reports regarding the severity of his back and knee pain.

07                                   Lay Evidence

08      Plaintiff also argues that the ALJ erred in assessing lay evidence from three individuals.

09  Testimony by a lay witness may provide "an important source of information about a claimant's

10  impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."

11  *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1998).

12  *Holly Delaney*

13      Holly Delaney saw plaintiff on a weekly basis between December 1998 until October 1999,

14  and resumed seeing him again in December 1999.  (AR 348-51, 390-91.)  Ms. Delaney first saw

15  plaintiff when she was an intern at Valley Cities Counseling, and later saw him as a private patient.

16  (AR 348.)  The parties agree that Ms. Delaney is not qualified as an acceptable medical source

17  under Social Security regulations.

18      Ms. Delaney reported that when plaintiff first came to Valley Cities in December 1998, "he

19  presented extremely depressed, anxious, and labile, with severe sleep disturbances and unable to

20  function on a daily basis.  He reported his depression beginning shortly after returning from his last

21  fishing trip sometime around September."  (AR 348.)  Ms. Delaney also reported that plaintiff

22  continued to present in an extremely depressed state in weekly counseling sessions.  (AR 349.)

23  She noted symptoms of ongoing depression "as evidenced by sleep disorders, lack of motivation,

24  isolation, feelings of melancholy interspersed with strong feelings of anxiety."  (*Id.*)  In December

25  1999, she stated that plaintiff appeared very confused, mentally scattered, and depressed.  (AR

26  351.)  In October 2000, she reported that depression and anxiety continued to be on-going

01 problems.  (AR 390.)  She indicated "[p]rogress is slow and painful with some increase in self-

02 awareness but overall emotional impairment continues to have a significant influence on daily

03 functioning."  *Id.*  She expressed an opinion that plaintiff could not successfully hold a job at that

04 point and that attempts to work would be short-lived and non-productive at best.  (AR 391.)  She

05 expected that his progress would "remain slow and that it is unlikely he will be able to return to

06 full time employment in any foreseeable time frame."  *Id.*

07        The ALJ mentioned Ms. Delaney's reports briefly in the decision, noting that plaintiff's

08 "counselor wrote that she felt claimant could not successfully hold a job, that attempts to work

09 would be short-lived and non-productive, at best."  (AR 24.)  However, the ALJ did not offer

10 specific and germane reasons to discount Ms. Delaney's testimony.

11        To the extent that Ms. Delaney has offered medical diagnoses, her testimony is not

12 competent evidence because she is not an acceptable medical source.  *Nguyen v. Chater*, 100 F.3d

13 1462, 1467 (9th Cir. 1996).  However, "lay witness testimony as to a claimant's symptoms or how

14 an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded

15 without comment."  *Id.* (emphasis in original) (internal citations omitted).  Here, Ms. Delaney

16 offered significant evidence regarding plaintiff's symptoms and how his impairments affected his

17 ability to work.  Her testimony also appears to be consistent with Dr. Washburn's reports, and the

18 ALJ did not offer any reasons to reject her testimony.  As such, her testimony may be credited to

19 the extent that she does not offer medical diagnoses.

20 *Chuck Graydon*

21        Plaintiff submitted the following letter dated October 15, 2002, from Chuck Graydon:

22 Steven Delnick has been enrolled in the Bates Technical College Boat Building
   Program since March of 2001.  Bates offers career-training programs that replicate,
23 as closely as possible, an actual industry employment setting.  This program runs 5
   days a week - 7 hours a day.  Though Mr. Delnick has proven to be highly motivated
24 and dedicated to learning the craft of boat building, I feel compelled to offer my
   observations in relation to his physical abilities on the shop floor.  I have observed Mr.
25 Delnick working in the shop on many days that he was obviously in great pain.  At
   times he would take breaks to attempt to relieve this pain.  In conversation with him,
26 it became apparent that for long periods of time there was no relief to be had.  Mr.

01    Delnick has made many sincere attempts to medically correct his condition, as

02    evidenced by the many doctors' appointments that would affect his punctuality with
the program.  In addition, Mr. Delnick[']s mental and emotional state . . . would on

03    occasion . . . affect his ability to focus and concentrate on the work at hand.  In
conversation with him it became apparent that bouts of depression would create

04    confusion as to the proper sequencing of the work.  As a summary, Mr. Delnick has
been unable to perform work at hand for at least 10 days of each 20-day work month.

05  (AR 257.)

06       The ALJ largely discounted Mr. Graydon's testimony, stating that:

07    Mr. Graydon indicated that the claimant was highly motivated and dedicated to
learning the craft of boat building.  He noted that the claimant appeared to be in pain,

08    but also noted that the claimant continued to work when he was in pain.  He also said
that depression would occasionally create confusion as to the proper sequencing of

09    the work.  He stated that the claimant had been unable to perform work at hand for
at least 10 days of each 20-day work month.  He does not explain how he made this

10    calculation.  I.e. are there ten days when he does not appear to be in pain and not
confused?  Or does he not show up half the time and the time he is in class he

11    appeared to be confused or in pain?  Clearly the claimant is able to perform physical
activities in spite of his pain complaints.  The fact that a person cannot work without

12    some pain or discomfort does not render him disabled.  Compare, Tonapetyan v.
Halter, 2001 WL 262626, page 6, (9th Cir. (Cal.)) See, Barajas v. Heckler. 738 F.2d

13    641, 644 (5th Cir. 1984).  The statement by Mr. Graydon is not supported by the
evidence and is at odds with his description of the claimant as highly motivated and

14    dedicated.  He does not explain why the claimant misses so much class nor does the
record reveal a reason, from a medical standpoint, why he misses so much class.

15    (Exhibit 25E).

16  (AR 30.)

17       Plaintiff argues that the ALJ has not offered germane reasons for discounting Mr.

18  Graydon's testimony.  However, the ALJ is correct that Mr. Graydon did not explain how he

19  made his calculation that plaintiff was unable to perform for at least 10 days out of a 20-day work

20  month. This is a germane reason to discount his testimony.  Without such an explanation, it is not

21  clear whether plaintiff was unable to perform more half the time that he was actually in class, or

22  whether classes that plaintiff missed were included in this calculation.

23  *Aholaah Arzah*

24       Plaintiff's friend Aholaah Arzah provided two statements regarding plaintiff's functioning.

25  (AR 204-08; 258).  Mr. Arzah described plaintiff as anxious, easily distracted, and noticeably

26  uncomfortable in public. The ALJ addressed Mr. Arzah's testimony by stating "I note Mr. Arzah's

ORDER OF REMAND
PAGE -14

01   concerns, but he does not address the discrepancy in his statement of limited functioning versus

02   the claimant's attendance at school or his ability to concentrate on building a boat when he

03   indicates that the claimant is easily distracted and noticeably uncomfortable in public." (AR 30.)

04   These reasons for discounting Mr. Arzah's testimony are specific and germane.

05   RFC Assessment

06        Plaintiff also challenges the ALJ's assessment of his residual functional capacity (RFC).

07   Under Social Security Rule 96-8p, an RFC assessment "must first identify the individual's

08   functional limitations or restrictions and assess his or her work-related abilities on a function-by-

09   function basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R. § 404.1545 and

10   416.945." Functions included under the relevant paragraphs of 20 C.F.R. §§ 404.1545 and

11   416.945 include both physical abilities (such as sitting, standing, walking, lifting, carrying, pushing,

12   pulling, reaching, handling, stooping, or crouching), as well as mental abilities (such as

13   understanding, remembering, carrying out instructions and responding appropriately to

14   supervision, co-workers, and work pressures in a work setting).

15        The ALJ assessed plaintiff's RFC as follows:

16-19   > The claimant can lift fifty pounds occasionally and twenty-five pounds frequently. He cannot work on a fishing boat due to the close quarters required of the crew. This limit is in giving the claimant the greatest benefit of the doubt that he says he can't work under those types of conditions any more. There is very little in the record that would suggest he is quite this limited in his ability to personally interact. He can perform simple and some complex tasks. I note that the claimant was less physically limited at his alleged onset date. The claimant did not have any physical limitations at his alleged onset date.

21   (AR 30.)

22   *Physical RFC*

23        The ALJ found plaintiff retains the RFC to lift fifty pounds occasionally and twenty-five

24   pounds frequently (*i.e.*, the lifting requirements for "medium" work. 20 C.F.R. § 1567(c)). As

25   plaintiff notes, this assessment is not consistent with the opinion of examining physician Raymond

26

01  West, who opined that plaintiff could lift 25 pounds "occasionally, if not frequently."[8] (AR 490.)

02  Based on Dr. West's evaluation, the State Agency physician opined that plaintiff could only lift

03  10 pounds frequently and 20 pounds occasionally and would be limited to light work. (AR 507.)

04      It appears that the ALJ found that plaintiff could perform the lifting requirements for

05  "medium" exertion work due to his participation in a boat building class. In response to

06  questioning by the ALJ, the vocational expert at the second hearing indicated that boat building

07  was "medium" work. (AR 359.) The ALJ stated that "[d]octors for the State Agency who opined

08  that the claimant was limited to light work were apparently unaware that he was doing medium

09  level work on a regular basis in his boat-building school." (AR 29.) However, the ALJ's finding

10  that plaintiff was performing medium work "on a regular basis" in his boat building class is an

11  overstatement. As discussed above, plaintiff's boat building instructor indicated that he was

12  unable to perform the work at hand in the class for at least 10 days out of each 20 day work

13  month. While the basis for that calculation is not clear, it does show that plaintiff was not

14  performing in his class on a "regular basis." In any case, there is no evidence in the record

15  regarding how much lifting was actually involved in plaintiff's boat building class and whether

16  plaintiff was able to perform such lifting. As a result, the ALJ's finding that plaintiff could lift up

17  to 25 pounds frequently and 50 pounds occasionally is not supported by substantial evidence in

18  the record as a whole.

19      The ALJ also made no explicit finding regarding how long plaintiff could stand, walk, or

20  sit in an eight-hour day, nor did she discuss any postural restrictions. To perform light or medium

21  work, a claimant generally has to be able to stand or walk at least 6 hours in an 8 hour day. *See*

22  SSR 83-10. Dr. West opined that plaintiff "is able to stand and walk at least 2-4 hours,

23  cumulatively, in an eight-hour day." He did not indicate that plaintiff could stand or walk for at

24

25      [8] As the Commissioner notes, plaintiff also told Dr. West that he believed that he could lift

26  80 pounds and carry it 50 feet. (AR 487.) However, Dr. West presumably took that statement
    into account when he found that plaintiff could lift 25 pounds occasionally, if not frequently.

01  least 6 hours in a work-day.  (AR 490.)  Plaintiff suggests that Dr. West's opinion should have

02  precluded the ALJ from finding that plaintiff retains the capacity to perform light or medium work.

03  (Dkt. 8, at 18.)  However, a non-examining State Agency physician opined that plaintiff could

04  stand or walk 6 hours in a workday, noting that "Dr. West states claimant is able to stand at least

05  2-4 hours a day but does not give objective evidence why claimant cannot stand for 6 hours in a

06  workday." (AR 511.)   The ALJ should have resolved this issue by making an explicit finding on

07  plaintiff's ability to stand and walk.  *See* SSR 96-8p.

08  *Mental RFC*

09       Plaintiff also argues that the ALJ erred by not including limitations related to

10  concentration, pace, and persistence in plaintiff's RFC assessment.  In assessing plaintiff's abilities

11  in these areas at step three, the ALJ stated that:

12       In the area of concentration, the claimant has demonstrated an ability to take
       instructions from a book and follow them through to build a small boat.  He attends

13       school for many hours every day.  He likes to read.  In March of 2001 he was able to
       repeat six digits forward and backwards.  He preformed [sic] serial sevens very well

14       (Exhibit 19F, p.39).  I find that the claimant has mild limitations in concentration,
       persistence or pace.

15

16  (AR 28.)  At step four, the ALJ also stated that plaintiff "has no problems with concentration as

17  documented by his schooling, hobbies, and mental status examinations."  (AR 30.)

18       Plaintiff disputes ALJ's reasons for these findings.  He notes that he only worked for short

19  periods of time each day on his small boat, and it did not turn out well.  (AR 611, 644.)  He also

20  notes that his school attendance was not consistent and that he had difficulty concentrating in

21  class.  (AR 633-34, 639).  He also states that he only reads about two hours out of a day.  (AR

22  612.)  Plaintiff points to numerous other documents in the record regarding his difficulties in

23  concentrating and following through.  (AR 136, 157, 204, 222, 255, 257, 258, 261, 351, 357, 477,

24  558, 603-04, 640, 653-54.)

25       Plaintiff also notes that Dr. Johnson initially opined that plaintiff had "moderate" limitations

26  in concentration, persistence, and pace (AR 653), but later stated in response to questioning by

ORDER OF REMAND
PAGE -17

01 the ALJ that these limitations were "arguably" mild to moderate. (AR 654-55.) Dr. Junko

02 McWilliams, a non-examining psychologist, opined that plaintiff would have "moderate"

03 limitations in maintaining concentration. (AR 322.) Dr. McWilliams opined that plaintiff "might

04 have difficulty in sustaining attention and concentration for extended periods and carrying out

05 detailed instruction." (AR 324.)

06      The Court finds that plaintiff's RFC assessment should have included limitations related

07 to concentration, pace, and persistence. Both Dr. Johnson and Dr. McWilliams opined that

08 plaintiff would have difficulties in concentration. In addition, considerable evidence from lay

09 witnesses, plaintiff, and other sources indicate that plaintiff has difficulties concentrating and

10 following through on tasks. Although the Commissioner suggests that the ALJ addressed such

11 concerns by restricting plaintiff to "simple and some complex tasks," the Commissioner does not

12 explain how these restrictions would accommodate plaintiff's difficulties in concentration, pace,

13 and persistence.

14      Although not raised by the parties, the Court also notes the ALJ's RFC assessment did not

15 include any limitations related to plaintiff's difficulties with social functioning, despite the fact that

16 the ALJ had found that plaintiff was moderately limited in this area. Limitations in social

17 functioning would appear to affect plaintiff's functional capacity, such as his ability to respond

18 appropriately to co-workers. In addition, it appears that some of plaintiff's past relevant work

19 (*e.g.*, as an automobile salesperson or taxi driver) would require frequent interaction with the

20 public. As such, the ALJ should have included limitations related to plaintiff's limitations in social

21 functioning in his RFC.

22 <u>Step Four Determination</u>

23      After assessing plaintiff's RFC, the ALJ found at step four that plaintiff could perform his

24 past relevant work as a cook, taxi driver, or automobile salesperson. These findings are consistent

25 with the testimony of vocational expert (VE) Brian Sorenson at the second hearing. At that

26 hearing, the ALJ presented the following hypothetical to Mr. Sorenson:

ORDER OF REMAND
PAGE -18

01
02
03
04
05
06
07
08
09
10
11

I have an individual who is currently – what did we say, 59 years old who was 55 years old at his onset date.  This person has completed at least – completed his high school diploma and three years of college and a restaurant management course that lasted six weeks but he said he has no certificate or degree although he may have it in the restaurant management course.  I can't remember.  This person has listed his work as being mostly as a cook and also job title various with racehorses, racehorse groom trainer, caring for racehorses.  I don't think that's all the types of work he's done.  He describes also – let's see.  Let me find it.  Doing auto sales from '89 to '90.  He did that previously '83 to '85 so he's had the earlier experience and then the more recent experience.  I saw one other thing in here.  Oh.  Oh, taxi driver, 4/92 to 5/95.  Okay.  Now, this individual has limits due to illness and well, just other problems, a variety of problems that affect his ability to work.  Well, at the last hearing I found that he has no limits physically.  I didn't see too much in the way of medical records.  It looks like he has maybe a little bit more than that now.  So for purposes of this question – this hearing I'm going to for this hypothetical limit him to medium work, that he can do some complex tasks but I wouldn't put him working on a fishing boat.  I think he testified to some real significant problems on working on a fishing boat that I wouldn't put him back on that I think probably due to the close quarters and some problems that he was relating to at the last hearing.  He should be able to do some skilled work.  So my question is would he be able to do any of his past relevant work?

12
13

(AR 658-658A).  Based on this hypothetical, the VE opined that a person with plaintiff's RFC could perform his past relevant work as a cook, taxi driver, or auto salesperson.

14
15
16
17

However, as discussed above, the RFC assessment set forth in this hypothetical was flawed.  When the record does not support the assumptions in the hypothetical, "the vocational expert's opinion has no evidentiary value."  *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  As such, the VE's opinions that plaintiff could perform his past relevant work cannot be credited.

18
19
20
21
22
23
24
25

It should also be noted that the ALJ sought no information from the VE regarding the mental demands of plaintiff's past relevant work, nor did she include any findings about those demands in the decision.  As the Ninth Circuit has noted, a step four evaluation requires "specific findings" as to both "the physical and mental demands of the past relevant work."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see also* SSR 82-62 (in finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain a specific finding of fact as to the physical and mental demands of the past job).  In addition, SSR 82-62 provides:

26

[F]or a claim involving a mental/emotional impairment, care must be taken to obtain

ORDER OF REMAND
PAGE -19

01     a precise description of the particular job duties which are likely to produce tension
02     and anxiety, e.g., speed, precision, complexity of tasks, independent judgments,
    working with other people, etc., in order to determine if the claimant's mental
03     impairment is compatible with the performance of such work.

04 No such efforts were made here, despite plaintiff's mental impairments. On remand, the ALJ must

05 make a more complete assessment of the mental and physical demands of plaintiff's past work and

06 compare them to his RFC.

07 Vocational Expert's Response to Plaintiff's Hypothetical

08     Finally, plaintiff points to the following testimony from the VE in response to a question

09 by plaintiff's counsel:

10     Q:    If a person would have a difficult time completing the work requirements in any
    of the jobs that you've mentioned or any jobs in the economy for approximately
11     ten days out of a work month would that eliminate all kinds of work?

12     A:    Yes.

13 (AR 661). This testimony has no evidentiary value because the record does not support the

14 assumptions in the hypothetical. Presumably, this hypothetical is based on Mr. Graydon's

15 statement that plaintiff could not perform in his class for at least 10 days out of a work month.

16 However, as discussed above, the ALJ offered specific and germane reasons to discount Mr.

17 Graydon's statement. In any case, Mr. Graydon's statement was limited to plaintiff's ability to

18 perform boat building work in his class. Mr. Graydon did not address whether plaintiff was

19 capable of performing other types of work that involved lower levels of exertion or concentration.

20 As such, Mr. Graydon's statement of plaintiff's difficulty performing in his class does not support

21 an assumption that plaintiff would experience similar difficulties completing work requirements

22 for all jobs in the economy.

23 Remand

24     Consistent with the discussion above, the Court concludes that the Commissioner's

25 decision is not supported by substantial evidence and is not free of legal error. The Court has

26 discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900

ORDER OF REMAND
PAGE -20

01  F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits where "the record has

02  been fully developed and further administrative proceedings would serve no useful purpose."

03  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
> must be resolved before a determination of disability can be made; and (3) it is clear
> from the record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

07  *Id.* at 1076-77.  The Court concludes that this matter should be remanded in part for an award of

08  benefits and remanded in part for further administrative proceedings.

09  <u>Remand for Award of Benefits for the Period of November 1, 1998 - August 4, 2000</u>

10      As discussed above, the ALJ did not provide legally sufficient reasons for rejecting

11  plaintiff's evidence from Dr. Washburn or Holly Delaney.  The Court further finds that no

12  outstanding issues need to be resolved before a determination of disability can be made for the

13  time period between November 1, 1998 and August 4, 2000, and that it is clear from the record

14  that the ALJ would be required to find the claimant disabled for this period if she considered

15  plaintiff's evidence.

16      Dr. Washburn first examined plaintiff in August 1999 and diagnosed him with major

17  depression and a compulsive disorder (gambling).  In March 2000, Dr. Washburn assessed

18  plaintiff's GAF at 50 and opined that plaintiff would not be able to work due to his deep

19  depression.[9]  On August 4, 2000, Dr. Washburn examined plaintiff for a third time and again

20  opined that plaintiff could not work until his depression improved.  Dr. Washburn's opinions are

21  consistent with the observations of Ms. Delaney, who started counseling plaintiff in December

22  1998 and indicated that plaintiff presented in an extremely depressed state in weekly counseling

23  sessions.  (AR 349.)  In light of this evidence, the Court finds that it is clear that an ALJ would

24  be required to find plaintiff disabled from November 1, 1998 until August 4, 2000, the date of Dr.

---

26      [9] It should be noted that Dr. Raghunath also indicated that plaintiff's GAF was 50 in May
1999.

ORDER OF REMAND
PAGE -21

01 | Washburn's last examination.

02 | Under these circumstances, no useful purpose would be served by remanding for further

03 | administrative proceedings regarding this time period. If credited, Dr. Washburn's opinions would

04 | effectively eliminate all substantial gainful employment, which would satisfy plaintiff's burden at

05 | step four and would necessarily preclude the Commissioner from meeting her burden at step five.

06 | "[W]here remand would only delay the receipt of benefits, judgment for the claimant is

07 | appropriate." *Rodriquez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (remanding for award of

08 | benefits in case where ALJ improperly rejected medical evidence that plaintiff could work a

09 | maximum of four hours per day).

10 | The Court also notes that plaintiff's initial application was filed six years ago, he has

11 | already undergone two administrative hearings regarding his initial application, and he is now 61

12 | years old. In similar circumstances, the Ninth Circuit has held that remand for an award of benefits

13 | is warranted. *See Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). The ALJ has already

14 | had two opportunities to address Dr. Washburn's opinions. "Allowing the Commissioner to

15 | decide the issue again would create an unfair 'heads we win; tails, let's play again' system of

16 | disability benefits adjudication."[10] *Benecke v. Barnhart*, 379 F.3d 587, 595.

17 | Remand for Further Administrative Proceedings for the Period After August 4, 2000

18 | The Court finds that it is necessary to remand this matter for further administrative

19 | proceedings with respect to the period after August 4, 2000. There are outstanding issues that

20 | must be resolved before a determination of disability can be made for this period. There is

21 | substantial evidence that plaintiff's mental impairments improved after Dr. Washburn last

22 | examined plaintiff on August 4, 2000. As a result, it is must be determined on remand whether

23 |

24 | [10] The Court is mindful that when an administrative determination is reversed, "'the proper

25 | course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke*, 379 F.3d at 595 (*quoting INS v. Ventura*, 537 U.S. 12, 16 (2002)). For

26 | the reasons discussed above, the Court concludes that there are such circumstances warranting an award of benefits for the time period of November 1, 1998 - August 4, 2000.

ORDER OF REMAND
PAGE -22

01 | plaintiff's mental impairments continued to be disabling after Dr. Washburn's last examination.

02 | Plaintiff's RFC must also be re-assessed on a function-by-function basis that includes his mental

03 | limitations as well as all relevant physical abilities.  The physical and mental demands of plaintiff's

04 | past relevant work must be determined in a manner consistent with SSR 82-62 and compared to

05 | his RFC to determine whether he can perform his past relevant work.  The ALJ should obtain the

06 | testimony of a vocational expert regarding these matters.  If plaintiff meets his burden of showing

07 | that he was unable to perform his past relevant work, a step five determination would also be

08 | necessary.

09 | Therefore, this matter is remanded in part for further administrative proceedings regarding

10 | plaintiff's claims for the period after August 4, 2000.  On remand, this matter should be heard by

11 | a different ALJ.

12 | **<u>CONCLUSION</u>**

13 | For the reasons discussed above, this matter is remanded in part for an award of benefits

14 | and remanded in part for further administrative proceedings.  The Clerk is directed to send copies

15 | of this order to all counsel of record.

16 | DATED this _3rd_ day of May, 2005.

17 |

18 | Mary Alice Theiler
United States Magistrate Judge

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

ORDER OF REMAND
PAGE -23